115-3184, Dayton Freight Lanes, Inc. v. Workers' Compensation Comm'n, John Mitchell, and Howard Huxley. Good morning. May it please the Court, Theodore Powers on behalf of the Avalanche Dayton Freight Lines. I'm going to focus on causation. The principal issue here is whether the claimant's work injury at Harbor Freight, who is a co-respondent in this matter, represented an intervening, independent accident, breaking the causal connection chain between his injuries at Dayton Freight and his current disabilities, his ensuing disabilities. Mr. Powers, before you get into these issues, could I ask you a couple of questions about your brief? Did you write this brief? I wrote the brief. Do you want to tell me what the standards of review on each of these issues is? It's questionable, because if you look at it as an example... It's questionable. You wrote a brief that tells us that the standard of review on issues of law is de novo, and the standard of review on issues of fact is manifest weight, and that a clearly erroneous standard applies to mixed law questions of law and fact. I didn't hear the last part, Judge. I'm sorry. You said that the clearly erroneous standard is applied to mixed questions of law and fact. Correct. And then you left us to guess which one we should apply to each one of the issues you raised. Well, if we look at your decision that came back... Do you think that when the Supreme Court enacted Rule 341.H.3, they intended to promulgate a guessing game? Or are you supposed to tell us what you believe the standard of review is for each issue you raised? I believe that the standard of review as it involves the Commission decision based upon nationals' right and based upon... It's not what 341.H.3 says. It's a matter of law. Mr. Power, you're missing my point. You never stated a standard of review for any issue you raised in this case. You regurgitated general statements as to standard of review for laws, de novo, and this and that, one and two and a half pages, and never once set forth a standard of review for the issue of causation or the issues of TTD. You never stated it. I believe I argued that I believe that the Commission decision dealing with the unrefuted facts misapplied the law as it involved national freight and Central Road. Mr. Power, you want to look at starting on page 35 of your brief? I have it here. Are you reading what you said? Based upon the issue presented in this appeal, Dayton contends that the Commission's decision reversing the arbitrator on the issue of causal connection was either contrary to law, clearly erroneous, or contrary to the manifest weight of the evidence. Correct. I believe it's on all fronts. You could look at the standard of review. You didn't say it was on all fronts. You said it was either one of the three. You, sir, are required to give us a standard of review on each issue you raise. And quite frankly, I'm tired of getting briefs that don't comply with the Supreme Court rules. It makes our job much more difficult. You haven't honed the issue. So now we have to go and figure out what the standard of review is for you. It was not my intention to have you start fishing around and looking for a standard of review. What we have here, from my view, is a misapplication by the Commission of both of the laws. Here's the problem. Let me intervene here. Okay. Even if what you say is true, you're missing his point. I understand that. I think your best position would be the next time you have a brief, you need to assign a standard to each issue as opposed to a general statement. Now, is that too hard to do? No, that's fine. Okay, why don't we move on? I appreciate that. All right. So what we're looking at is a causal connection issue. We're dealing with an intervening accident. We have our claims, which stem or go back to 2001 and 2003, and then we have actually a hearing in 2006 on similar issues in terms of TTD causation and medical issues at that point with a determination made by the Commission. We then have an order at that point in time about TTD being paid as well as prospective medical in the form of pain management treatment. There was a discussion in 2003 that he may have needed fusion surgery for his lumbar condition. That ended up turning into pain management per the order of the Commission. We then have a gap of time where he is working. He worked as a realtor. We booked him. We got him a job as a security guard. Mr. Powers, can I ask you another question? Sure. Was Dr. Bernstein your expert? Yes. Do you want me to read to you what he said? It is my opinion that his, meaning the claimant's, current condition is a result of his prior accidents of August the 29th, 2001, and April the 4th, 2003, and not the result of a new accident December 30th, 2010, or the development of worsening neck pain in March 2011. You don't have a single doctor, not one, who offered a medical opinion that his current condition of ill being is a result of the December 30th accident. Your own expert puts it on you. No, but if you look at the rest of Dr. Bernstein's opinion, he doesn't believe he requires medical treatment. He believes that he can work. Counsel, I mean, the overarching issue here is whether or not the Harbor Freight injury was an intervening accident that brought the causal change. And you have three doctors, Dr. Zedrick, Dr. Merkovich, and Dr. Bernstein, that all say that this Harbor Freight injury was a temporary exacerbation or aggravation. How is the commission's decision, which did not find the Harbor Freight injury to be an intervening accident, sufficient to break the causal connection against the manifest weight of the evidence, when that's the evidence? Well, and I think the manifest weight of the evidence, I mean, first of all, medical opinions are not required or need not be accepted by the commission. I think case law supports that simply because you have a medical opinion or if you don't have one, that therefore, you know, you cannot either just prove or the evidence doesn't overcome it. You're actually correct in the abstract on that. But when you're talking about an apposite conclusion being clearly apparent, you know, you have three doctors giving opinions against the claimant, all right? And the standard is, is there sufficient evidence in the record to support the commission's decision? How do you just exclude the medical opinions on the theory that you don't need them? You don't need them, but they're there. The thing that I actually focused on was the decision of the commission, because remember, in some regards, the arbitrator had the same evidence, and he came to the conclusion. Mr. Powell, you know very well we don't review arbitrators' decisions. The fact finder is the commission. I understand it, but I also cite a case authority where an arbitrator's decision must be given legal effect. Oh, really? Do you have that case with you? What case is that? Wait, do you have that case with you? What case is that? So this case is, hold on, Lewandowski v. Industrial Commission. Do you want the site number? Yes. What is the site number? 44L2-204-1969. It's a fresh authority, but what does it stand for? It stands for when you're looking at whether a decision of the commission is contrary to the manifest way, you can look to the arbitrator's determination as to whether the decision was in fact supported by the arbitrator. Why don't you read to us the section that you're relying on? Well, the key I'm reading, and it's inside, the arbitrator's decision in a workers' compensation case is not without legal effect and can be relied upon by the circuit court in entering judgment when the decision of the Industrial Commission is against the manifest way of the office. Is that the head note? Is that what you're reading to us? I'm reading the head note right now. Why don't you read to us what the case is? And according to the actual holding under, I'm trying to see what page it would be on, under the official site, the court states, in view of the claimant's language difficulty, the arbitrator was in a better position to evaluate his testimony than was the commission. The arbitrator's decision is not without legal effect and can be relied upon by the circuit court in entering judgment when the decision of the commission is against the manifest way, citing Hendren v. Industrial Commission, 19 ILL 2D44-1960. The point of this whole case is you have enunciated factors which are to be used or which you have looked at in determining when there is evidence that a condition had, there's been an intervening accident and that the disability is the result of this intervening incident. And you're talking about National Freight? National Freight and Chicago Department. Okay, you understand how the posture of this case is different than the posture of National Freight. There we were affirming the decision by the commission that the second accident was an intervening accident and discussed the facts of that case in affirming the manifest way decision or on a manifest way basis affirming the decision. Here you're wanting to reverse positions and say that that was a test that we established. Those are necessary factors. It's still a manifest way to review and it's a fact determination on the part of the commission, right? Correct. But the fact, again, as an example of National Freight, I believe we're much stronger for saying that it was contrary to the manifest way considering the nature of that. Mr. Power, I think it escapes you that the commission makes the choice, not us. The commission makes the choice. I understand that. I understand that you can't armchair the commission, Your Honor. I really do. Counsel, quite frankly, I've got to be very honest with you and I don't usually telegraph how I'm going to vote from the bench, but I don't know how with a straight face you can stand up here and attempt to contradict the opinion of your own expert, your own medical expert. My expert indicated that he didn't need medical treatment and could go back to work. Dr. Markovic, who was the expert, the IME expert for Harbor Freight, said basically the same thing. He doesn't need the treatment and he can go back to work. And the disturbing thing with the commission is that their comment was he returned to baseline. And if he returned to baseline, that would mean that he would go back to pain management at RFC and he would go back to work. Do you know what baseline for this man was according to these records? Yes, I want to know. In excruciating pain constantly. And that was his baseline. He was going to, according to baseline, if you look at his records at RFC, he had pain, he would go in to get medications updated. He had symptoms of a certain type. So he periodically would go for medication refills. He was told he could go to work. He was placed at MMI. And then we have an accident. And we have Dr. Zundrich's opinion that his condition is related to our accidents as opposed to Harbor Freight. But if you look at his treatment records, is that what he says? Dr. Zundrich says, this is a new discreation. Dr. Zundrich says, let's do an injection in epidural because that's always a precursor, as we know, for if it doesn't work, you're going to have to have surgery. So was the commission required to believe the claimant in this case? Is that your bottom line argument? Obviously, their duty is to weigh the evidence and credibility of it. As you were talking about all morning, you had the claimant's testimony versus the medical testimony of everybody else against the claimant. So why does the commission have to exalt the claimant's testimony over the medical evidence? You haven't told us why. But, Judge, from my understanding from the evidence, he admitted that his condition got worse after this accident. He admitted that he had now used a cane. He admitted he couldn't walk now. Who is he, the claimant? The claimant. Okay. Well, he can testify to anything he wants. The commission still has to weigh his credibility in the evidence, don't they? They have to weigh it. I don't believe they properly weigh it. Okay. Look, I mean, if we look at the changes that occurred, and if you line up the changes that he suffered after the accident at Harbor Freight, and you look at the case with the factors that were negotiated here in National Freight and in Central Parkway, his symptoms worsened and he had new symptoms. He now had numbness and tingling in those legs that he didn't have before, and he had increased pain. He now sees an orthopedist. He hasn't seen an orthopedist for five years. He now returns to RIC for pain management. He now has a new MRI which shows, according to Dr. Zendrek, a new disc herniation at L3-L4. We now have an increase in his medication because the medications aren't working anymore that he was taking at RIC. He has an epidural injection. He now has a recommendation for surgery. He now is unable to work. He is now restricted from working. He now requires the use of a cane. Those are a lot of changes in a condition after an undisputed work accident where the doctors agreed that the mechanism of injury could, in fact, result in additional acute trauma. Didn't they test, looking at the opinion of Mujkovic or Zendrek, that there was an exacerbation of a preexisting condition that is, quote, a temporary increase in the symptoms, but it appears to have come back to baseline. Was that not his testimony? That's the testimony. And Mujkovic said, more likely than not, it was related to underlying chronic low back pain rather than the events of December 30, 2010. Is that what he testified to? That's what he testified to. And then your own expert testifies, in my opinion, that it is my opinion that this claimant's current condition is a result of his prior accidents of August 29, 2001, April 4, 2003, and not the result of a new incident on December 30, 2010. And in the face of that, you want us to look at the medical records and say these three doctors were wrong and it was against the manifest way, the evidence to rely on. That's what you want us to do. Yes, I want you to do that. And I also want to want the, you know, in terms of looking at the decision of the commission, when they are the opinion and their basis for indicating. Counsel, your time is up. You'll get a chance to respond to that question and reply. Thank you. Counsel, you may respond. Good morning, Your Honor. Good morning, Justice. May it please the Court, I would like to request to split the time between the two appellees in this matter, between me and Mr. Gannon. Then you have seven and a half minutes. I'm sorry? You have seven and a half minutes. Thank you. Yes. May it please the Court, Susan Walsh on behalf of Harper Freight. Can you address something for me? Absolutely. I'm absolutely befuddled by your jurisdictional argument. I am absolutely befuddled by it. Both of you seem to contend that the order of April 30, 2014, was a final determination on the issues of causation and prospective medical care. Correct. I don't understand that. It was a final order? In the April 30, 2014 order. Which claim did it dispose of? In my opinion, it disposed of the only issues of dispute with respect to final causation. The only reason for a man was for a calculate. There was a miscalculation. Well, it was supposed to calculate what he was owed for TTD and maintenance, et cetera, and so on. In fact, it wasn't really a calculation. They awarded a different amount of TTD the second time than they had the first time, had they not? Correct. So I'm a little bit of a loss. I mean, this wasn't a simple calculation that they were supposed to do. They had a rule on how much TTD he was entitled to. And I believe what the court had said was that there was a calculation error, and so they demanded that for recalculation. Well, if recalculation is merely a mathematical two times two is four, I agree with you. But this wasn't two times two is four. He sent it back because they had to determine how much TTD he was entitled to, period. True. So that makes it an interlocutory order. That's why I'm befuddled by your jurisdictional argument. The jurisdictional argument was based upon the fact that? They decided he decided causation in prospective medical care, and you contend that the order was final as to those two issues. As to those two issues. We know finality doesn't exist based on issues. It exists based on claims. And so it has to dispose of an entire claim. And the entire claim on this case was a worker's compensation application for adjustment of claim. It did dispose of that. It was my understanding that it was dispositive as to the main issues in dispute, which were causation in prospective medical. And that's why it would be considered a final order as to those issues. Now, it isn't just main issues. It's all issues. Okay. Okay. Well, in that case, I'll move on to my second argument. Thank you. Which was that the commission's decision was not against one of the weighty evidence. Your Honors have pointed out to yourselves that three orthopedic doctors have all opined that the incident of heart heartbreak was merely a temporary exasperation of a preexisting condition that had returned to baseline. Mr. Mitchell only worked for heartbreak part-time for a couple months. Prior to that, he had not worked full-time work for over six years. Mr. Mitchell testified at trial that his manager was very helpful in the fact that he was allowed to take breaks as needed. He was very good with his lifting restrictions. He had a hard time driving home from work. We're aware of all of his testimony. Let me ask a point of question. Mr. Powers is waiving the national freight case, saying that case controls the results here. He wins. That is not ñ if you don't agree with that, why not? I don't agree with it on a number of bases. First of all, Mr. Mitchell's complaints were the same pre and post the incident of heartbreak. Mr. Powers didn't mention that surgery, the same surgery was recommended back to ñ Did you read national freight? Yes. Okay. So can you distinguish it, or does that case control? I don't believe the case controls, and I think it can be distinguished based upon the manifest weight evidence standard here. I believe that Mr. Powers was arguing that it's a mixed question of law and fact, which I don't believe it's here. I think this is strictly a question of fact and manifest weight evidence standard. I think Justice Sarris gave you the answer earlier. In that case, we were asked to uphold the commission's decision. It was a totally different perspective and posture than we have here. The overarching issue is always whether there's sufficient evidence to uphold the commission. That's what it boils down to. And I believe in this case that there's more than sufficient evidence to uphold the commission's decision based upon three doctors opining that there was no intervening accident, the same complaints pre and post the incident of heartbreak, surgical recommendation, same surgical recommendation back to 2003. So obviously the commission doesn't have to believe the claimant in the face of all of this conflicting medical evidence, does it? It does not. Okay. And I think Mr. Mitchell's testimony in fact supports the fact that he believes that his condition of well-being went back to the prior accidents with Davey. And I believe he testified as much in the transcript, and in fact I believe there's testimony that he didn't even want to file a case against Harbor. However, he didn't want the FTCs. So aside from all these side issues, that's the bottom line. It's not against the manifest way. So that's your conclusion, right? Correct. Okay. Thank you. Thank you, counsel. Counsel, you may also respond. Justice, may it please the Court, Mr. Powers and Ms. Walsh, I'm kind of afraid to say anything. Do you want to give us... For the record, would you give us your name? Yeah, Mr. Cannon, Jack Cannon. You could steal a defeat from the charge of victory. No, I'm thinking that. Maybe I should just sit down. It's possible. Thank you. Thank you, counsel. Counsel, you may reply. Don't let any of these questions signal to you which way we might go. Now remember that. Okay? My issue in the case deals with the commission's holding of baseline. When you said that when they say, they make a holding and a ruling that based on this collection of evidence, he returned to baseline, and I have a difficult time understanding that type of determination where we can see, based upon all the evidence, that his condition changed, that he didn't return to baseline. We have opinions that, from two IME doctors, which a lot of times the commissions will reject and they won't agree with, would say that he doesn't require medical treatment and that he can go back to work. And then we have Dr. Zendrick, who, if you look at his records, which contradict what he testifies to, says that he has a new injury, and he's doing things representing that he has a new injury. He takes him off of work. He could work before. That's baseline. Baseline is he was at MMI from our accidents since 2008 at the latest, the earliest 2005. And now we have him working. He was a realtor. He's working for Harbor Freight. We found a job as a security guard. He's not restricted to hours. He takes a job with Harbor Freight. And now he can't work. He's taken off of work. Those facts demonstrate to me that he's not at baseline. Now, if you want to believe the IME doctors, you can't cherry-pick. So you can't say, these doctors said this condition is causally connected to Daden's injury. And then when the doctor also replied, and he doesn't need treatment, and he should be back at work. And you can't then award all this TTD and prospective surgery. To prospective surgery for what? He didn't have OPD treatment for five years. He was getting pain management under the evidence that was produced at the prior hearing. So I have a problem with when the commission's holding, which I think is incorrect based on all the evidence, that he was back at baseline. He was not back at baseline. He cannot work. He now needs surgery, which was not discussed, going back to seven or eight years prior. And Dr. Mendevick, if you look at his testimony, well, if someone said you had to have surgery in the past, that doesn't mean you need surgery now. That was something that occurred back then. And it stopped being an issue. It wasn't an issue anymore. And there was a disagreement that we had about that. So my issue was baseline. And then my other issue is when we start using words which mean the same thing and try to differentiate. So we have the commission now saying, relying upon Zundrich, well, it just exacerbated his condition. It didn't aggravate it. Okay? Look it up. They mean the same thing. An absorbation is an aggravation is an acceleration. And his core has said those are things which will, in fact, affect quality of action. Counsel, let me ask you a question. I'm just going to make this real simple. I'm not very bright, so I have to use real simple examples. If I have a disc problem and it hurts me, and then I do something that really inflames it and it hurts me worse, but then again the inflammation goes down and I go back to my original disc problem, do I lose causation because of that inflammation? I went back to baseline. I went back to right where I was. Based upon that set of facts, you're talking about there was a temporary aggravation. And that's what Zundrich said happened in this case, a temporary aggravation. He resumed the baseline condition. I understand what Zundrich said, but it's kind of not supported by the facts. Why was he doing an injection? Why did he say he had a new disc herniation? Why was he now taking him off of work? I don't know. Those were questions that the commission had to answer. I thought I did my best to cross them on it. I understand that, but the guy that sunk you was your own expert, Bernstein. You can't get around his opinion. There's no way around it. I don't have to have doctors. You don't need doctors in order to support your case in terms of based upon the manifest way to the evidence. I apologize. I'm kind of beating that horse right now. Okay. Thank you for your time. Thank you, counsel. Thank you, counsel, all for your arguments in this matter. It will be taken under advisement and a written disposition shall issue.